IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Darla Jean Palen,                  :

            Plaintiff,              Civil Action 2:13-cv-0727

                            :

    v.                            Judge Sargus

                            :

Carolyn W. Colvin, Acting         Magistrate Judge Abel
Commissioner of Social Security,   :
           Defendant.

                            :

## Report and Recommendation

Plaintiff Darla Palen brings this action under 42 U.S.C. §§405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security denying her application for Social Security Disability Insurance Benefits.  This matter is before the Magistrate Judge for a report and recommendation on the parties' cross-motions for summary judgment.

**Summary of Issues.** Plaintiff Palen maintains that she became disabled on June 1, 2009, at age 45, due to problems with her back, hips and legs.  (*PageID* 198.) The administrative law judge found that Palen retained the ability to perform a reduced range of work having light exertional demands. (*PageID* 50.)

Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- The administrative law judge failed to follow the treating physician rule by giving "little weight" to the opinions from treating physician, Dr. De La Cruz; and

- The administrative law judge failed to properly evaluate Palen's credibility.

**Procedural History.**  Plaintiff Palen filed her application for disability insurance benefits on June 26, 2009, alleging that she been disabled since June 1, 2009.  (*PageID* 174-75.)  The application was denied initially and upon reconsideration.  (*PageID* 101-06, 110-15.)  Plaintiff sought a *de novo* hearing before an administrative law judge.  (*PageID* 116-17.)  On February 1, 2012, an administrative law judge held a video hearing at which plaintiff, represented by counsel, appeared and testified.  (*PageID* 68-89.)  A vocational expert also testified.  (*PageID* 89-98.)  On September 28, 2010, the administrative law judge issued a decision finding that Palen was not disabled within the meaning of the Act.  (*PageID* 44–56.)  On May 22, 2013, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security.  (*PageID* 26-30.)

**Age, Education, and Work Experience.** Plaintiff Palen was born on January 2, 1964 and was 45 years old on the alleged disability onset date.  (*PageID* 54, 193.)  She has a high school education.  (*PageID* 202.)  She has past relevant work experience as a nurse's assistant, retail cashier, and stock clerk.  (*PageID* 54, 199, 213.)

**Plaintiff's Testimony.**  Palen lives with her husband.  (*PageID* 69.)  She reported difficulties driving due to problems with her right leg when using the gas pedal and then her hands "get tingly" and numb when it gets cold.  *Id.*

 Palen testified that she is unable to work due to her back, leg and ankle pain.  (*PageID* 74.)  She described sharp back pain that radiates down her right leg and occurs

2

"mostly every day." (*PageID* 74-75.)  Palen believes her pain is getting worse, noting sometimes she gets a "catch" in her legs.  She described that sometimes when she goes to walk, her leg "freezes" and she has to stay still until it relieves and then she can move again.  (*PageID* 75.)  Her pain increases with sitting for long periods and improves when she lies down with her feet elevated.  *Id.*  Palen testified that her medication sometimes helps, depending on the severity of her pain.  (*PageID* 76.)  She also has swelling in her legs on a daily basis with long periods of standing.  (*PageID* 77.)  Plaintiff has to sit with her legs elevated to alleviate the swelling.  (*PageID* 78.)  She sits with her legs elevated three to four times a day for an hour or longer.  (*PageID* 78-79.)

Palen estimated she can walk for 15 to 20 minutes.  (*PageID* 84.)  She can stand for 20 minutes.  Plaintiff stated she can sit for about 30 minutes.  *Id.*  She can manage to lift a gallon of milk, but finds it a "little difficult." (*PageID* 89.)

As to her daily activities, Palen testified that two or three times a week she has days when she stays in bed most of the day because her pain.  (*PageID* 76.)  She takes a nap on a daily basis for three to four hours because of problems sleeping at night due to pain.  (*PageID* 86-87.)  Palen stated she is able to do some light dusting around the house.  (*PageID* 87.)  She is able to do a "little" bit of the cooking if it is something "light." *Id.*  Her husband does the laundry.  (*PageID* 88.)  Palen's son also helps out around the house.  Her husband does the grocery shopping and she will go with him "once in a while." *Id.*

3

As to her personal needs, she has to sit down in order to dry off after taking a shower.  (*PageID* 89.)

**Vocational Expert's Testimony.**  The administrative law judge proposed a series of hypotheticals regarding Palen's residual functional capacity to the vocational expert. The administrative law judge asked the vocational expert to consider an individual with Palen's vocational characteristics who was limited to light exertion with the following restrictions: she should avoid concentrated exposure to excessive noise; or exposure to hazards such as moving machinery or unprotected heights; and she is limited to occupations which do not require fine hearing capability, complex verbal communication, or frequent telephone communication.  (*PageID* 91-92.)  Based on the above hypotheticals, the vocational expert acknowledged that Palen could not perform her past relevant work, but that such an individual could perform light exertional work as a file clerk, with 1,300 jobs in the regional economy; or general office clerk, with 9,300 jobs in the regional economy.  The vocational expert also testified to sedentary exertional jobs that Palen could perform such as an envelope addresser, with 3,000 jobs in the regional economy; or as a document preparer, with 6,100 jobs in the regional economy.  (*PageID* 93-95.)

When cross-examined by Palen's representative, the vocational expert was asked about limitations involving less than occasional use of the bilateral hands for fingering and being off task resulting in a 20% decrease in productivity; the vocational expert

testified these limitations do not allow for ability to sustain competitive work.  (*PageID* 97-98.)

**Medical Evidence of Record.**  The relevant medical evidence of record is summarized as follows:

Mario Mejia, M.D.  Palen's former primary care physician, ordered an MRI due to her history of low back and left leg pain.  The MRI of the lumbar spine taken on July 28, 2008, showed minimal L3-4 disc space narrowing, mild hypertrophic degenerative changes through the lumbar spine and borderline spinal stenosis at L3-4 and L4-5. (*PageID* 267.)

When examined on June 15, 2009, Palen had left leg edema, left leg calf tenderness and lumbar spine tenderness.  (*PageID* 260-61.)  That same day, she underwent venous scanning of the left lower extremity and right common femoral vein that resulted in normal findings with no evidence of DVT (deep vein thrombosis).  (*PageID* 265.)

On January 5, 2010, Palen had tenderness in her lumbar spine.  (*PageID* 274-75.) On March 31, 2010, Palen complained of right leg pain that "catches."  Palen rated her pain at a level of 8 on a 0-10 visual analog scale.  She also complained of swelling between the 2nd and 3rd toes and reported she needed paperwork filled out.  (*PageID* 294.)  Examination revealed right foot swelling.  (*PageID* 295.)

Reynaldo De La Cruz, M.D.  Dr. De La Cruz, who lists his medical specialty as internal medicine, began treating Palen on June 29, 2010.  (*PageID* 382.)  On July 6, 2010,

Palen complained of lower back pain, leg pain, and occasional headaches.  Dr. De La Cruz diagnosed lower back pain, varicose veins, and tobacco abuse.  (*PageID* 367.)

On August 10, 2010, Palen underwent a stress myocardial perfusion scan which resulted in a left ventricular ejection fraction of 66%, with normal wall motion.  (*PageID* 353.)  An echocardiogram taken on August 10, 2010, showed that the left atrium and left ventricle are of normal size. The mitral valve showed no thickening, stenosis, or pro-lapse.  The aortic valve shows no thickening, stenosis, or regurgitation, tricuspid 1-2+ tricuspid regurgitation, and no significant pericardial effusion.  (*PageID* 372-73.)

On September 8, 2010, Palen reported tingling and numbness with pain in her knuckles, leg swelling, and headaches.  Dr. De La Cruz found edema of the lower ex-tremities with varicosities.  He diagnosed probable Raynaud's disease, bilateral lower extremity edema, angina, and headaches.  (*PageID* 363.)

Palen presented to the emergency room at East Ohio Regional Hospital on Sept-ember 21, 2010, for left hip pain and lower extremity pain.  Examination revealed muscle spasms in the back and SI joint tenderness bilaterally.  (*PageID* 350.)  An x-ray of Palen's pelvis and left hip were unremarkable.  (*PageID* 354.)  She was diagnosed with exacerbation of chronic low back pain with prescriptions for Percocet and Robaxin. (*PageID* 351.)

On October 20, 2010, Dr. De La Cruz completed a Multiple Impairment Quest-ionnaire.  (*PageID* 382-89.)  Palen's diagnoses were listed as low back pain, hip pain, and leg pain.  (*PageID* 382.)  Dr. De La Cruz felt Palen's prognosis was fair.  The only clinical

6

finding supporting his diagnoses was lumbosacral tenderness.  *Id.*  Palen's primary

symptom was low back pain.  (*Page-ID* 383.)  She had "daily" pain that increased with

motion of the spine. He rated Palen's pain as moderately severe.  (*PageID* 384.)  Dr. De

La Cruz opined that Palen could sit for one hour total and stand/walk for less than one

hour total in an 8-hour workday.  Palen needed to get up and move around every 30

minutes when sitting.  *Id.*  He stated it is necessary for Palen not to sit continuously in a

work setting.  Palen cannot stand or walk continuously.  Dr. De La Cruz opined that

Palen could frequently lift 0 to 5 pounds, and occasionally lift 10 to 20 pounds.  He

noted that Palen could frequently carry 0 to 5 pounds, and occasionally 5 to 10 pounds.

(*PageID* 385.)  She had significant limitations performing repetitive reaching, handling,

fingering, and lifting due to pain.  *Id.*  Dr. De La Cruz opined that Palen had moderate

limitations in her ability to use her upper extremities for grasping, turning, and twisting

objects, and reaching.  (*PageID* 385-86.)  Her pain, fatigue, or other symptoms were

frequently severe enough to interfere with her attention and concentration.  (*PageID*

387.)  He opined that Palen is not a malingerer. He noted that Palen would need to take

unscheduled rest breaks every hour for up to 20 minutes.  *Id.*  Dr. De La Cruz stated

Palen had good days and bad days, but she would be absent from work two to three

times a month as a result of her impairments or treatment.  (*PageID* 388.)  Dr. De. La

Cruz concluded that the symptoms and limitations detailed in the questionnaire began

in 2009.  *Id.*

When seen for a check-up on April 26, 2011, Palen complained of right-sided pain in her lower back radiating to the right leg with some numbness.  Dr. De La Cruz diagnosed severe lower back pain.  He recommended exercise, weight loss, and following a diet. (*PageID* 406.)  On July 13, 2011,  Palen was seen by the nurse practitioner in Dr. De La Cruz's office and she complained of right leg pain radiating from the hip.  Her medications included Ibuprofen and Flexeril. Exercise, weight loss, and following a diet were again recommended. (*PageID* 401.)  X-rays of the lumbar spine were ordered.  Six x-rays showed mild levoscoliosis with no fracture or subluxation.  Disc space height was normal. (*PageID* 407.)

On September 15, 2011, Palen complained of headaches with nausea and photophobia.  She was on a muscle relaxant and Tramadol, which she said was "not doing anything."  Dr. De La Cruz diagnosed lower back pain from lumbar strain and migraines. He prescribed Flexeril, Ibuprofen, and Vicodin.  Exercise and weight loss were recommended. (*PageID* 398.)

On January 25, 2012, Dr. De La Cruz wrote a letter that restated his responses to the October 20, 2010, Questionnaire.  He again  reported that lumbosacral tenderness supported his diagnosis. No other clinical, medical test, or imaging findings were set out. (*PageID* 445-46.)

William Padamadan, M.D.  On September 24, 2009, Palen was consultatively examined by Dr. Padamadan on behalf of the state agency.  (*PageID* 282-88.)  Palen complained of low back pain, left leg doubling in size, pain in her fingers and hips and

8

migraines.  (*PageID* 282.)  He found that Palen has no history of parathesias of the perineum, foot drop, or falls, or bowel or bladder incontinence.  *Id.*  On examination, Palen was 5'3" tall and weighed 165 pounds.  Her lungs were normal.  Her hands were normal without clubbing, cyanosis, or wasting of muscle.  The range of motion of her shoulders, elbows, wrists, and fingers were normal.  She had no edema of the legs.  The range of motion of the hips, knees, and ankles was normal.  Range of motion of the spine was normal.  She had a normal gait.  Her speech was fluent.  She had no sensory or motor abnormalities.  Her reflexes were normal.  Her muscle tone was completely normal.  (*PageID* 283-84.)  Dr. Padamadan diagnosed normal physical examination, history of depression without any overt mood or affect problems, finger pain without arthritic process, low back pain without any objective findings, and migraine headaches without any overt discomfort.  (*PageID* 284.)  Dr. Padamadan concluded that, "Based upon this critical evaluation, in the absence of objective findings of any functional impairment I do not see any indication for limitation of physical activities."  *Id.*

    Dimitri Teague, M.D./Gary Hinzman, M.D.  On November 28, 2009, Dr. Teague, a state agency physician, conducted a review of Palen's medical records and found she had no severe physical impairment.  Dr. Teague gave weight to Dr. Padamadan's opinion.  Dr. Teague concluded that Palen's symptoms were attributable to a medically determinable impairment in nature, but not in severity; and her allegations were partially credible.  (*PageID* 289.)  On May 13, 2010, state agency reviewing physician, Dr. Hinzman affirmed Dr. Teague's assessment.  (*PageID* 346.)

**Administrative Law Judge's Findings.**  The administrative law judge found

that:

1.  The claimant meets the insured status requirements of tile Social Security Act through June 30, 2013.

2.  The claimant has not engaged in substantial gainful activity June 1, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.  The claimant has the following severe impairments: polymyalgias, low back pain, hip pain, leg pain, hand pain, hypertension, Eustachian tube dysfunction, mastoiditis, mild hypertrophic degenerative in the lumbar spine, borderline spinal stenosis at L3-L4, L4-5, mild levoscoliosis, and migraine headaches [20 CFR 404.1520(c)].

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that the claimant can perform less than a full range of light work as defined in 20 CFR 404.1567(b).  The claimant retains the residual functional capacity to occasionally lift and/or carry including upward pulling 20 pounds; frequently lift and/or carry including upward pulling 10 pounds; stand and/or walk with normal breaks for a total of about six hours in an eight hour workday; sit with normal breaks for a total of about six hours in an eight hour workday; and her ability to push and/or pull including the operation of hand and/or foot controls is unlimited other than as shown for lifting and/or carrying.  The claimant is further limited by the following restrictions: she should avoid concentrated exposure to excessive noise; or exposure to hazards such as moving machinery or unprotected heights; and she is limited to occupations which do not require fine hearing capability, complex verbal communication, or frequent telephone communication.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.  The claimant was born on January 2, 1964 and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and can communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 1, 2009, through the date of this decision (20 CFR 404.1520(g)).

(*Page ID* 49-56.)

**Standard of Review**.  Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)).  It is "more than a mere scintilla." *Id.  LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "take into account whatever in the record fairly detracts from its weight." *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting

11

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.**

- <u>Plaintiff contends that the administrative law judge failed to follow the treating physician rule</u>.  Plaintiff argues the administrative law judge improperly weighed the medical opinion of treating physician, Dr. De La Cruz.  Plaintiff also argues that Dr. De La Cruz's opinions are based on medically-appropriate clinical and diagnostic abnormalities.  The administrative law judge further failed to cite to other substantial evidence contradicting the opinions from the treating doctor.  According to plaintiff, the administrative law judge could not supplant the treating source's opinions with his own lay assessment or give lip service to a conclusion that he relied on the consultative sources when he clearly did not give these sources any weight.  (Doc. 9 at *PageID* 484-88.)

- <u>The administrative law judge failed to properly evaluate Palen's credibility</u>. Plaintiff contends the administrative law judge's findings were  insufficient to find Palen not credible.  According to plaintiff, the administrative law judge again largely substituted his interpretation of the raw medical data for the treating physician by concluding that the diagnostic imaging and clinical evidence were insufficient.  The administrative law judge also failed to explain how Palen's activities of

12

daily living contradicted her allegations of disability.  (*Id.* at *PageID* 488-90.)

**Analysis.**

Treating Doctors' Opinions.  Plaintiff argues that the administrative law judge erred in rejecting the opinions of Dr. De La Cruz.

Treating Physician: Legal Standard. A treating doctor's opinion[1] on the issue of disability is entitled to greater weight than that of a physician who has examined plaintiff on only one occasion or who has merely conducted a paper review of the medical evidence of record. *Hurst v. Schweiker*, 725 F.2d 53, 55 (6th Cir. 1984); *Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048, 1054 (6th Cir. 1983). The Commissioner's regulations explain that Social Security generally gives more weight to a treating doctors' opinions because treators are usually "most able to provide a detailed, longitudinal picture" of the claimant's medical impairments. 20 C.F.R. § 404.1527(c)(2). When

---

[1]The Commissioner's regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Treating sources often express more than one medical opinion, including "at least one diagnosis, a prognosis and an opinion about what the individual can still do." SSR 96-2p, 1996 WL 374188, at *2. When an administrative law judge fails to give a good reason for rejecting a treator's medical opinion, remand is required unless the failure does not ultimately affect the decision, *i.e.*, the error is *de minimis*. *Wilson*, 378 F.3d at 547. So reversible error is not committed where the treator's opinion "is patently deficient that the Commissioner could not possibly credit it;" the administrative law judge's findings credit the treator's opinion or makes findings consistent with it; or the decision meets the goal of 20 C.F.R. § 404. 1527(c)(2) but does not technically meet all its requirements. *Id. See, Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013).

the treating doctor's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record" the Commissioner "will give it controlling weight. " *Id.*

Even though a claimant's treating physician may be expected to have a greater insight into his patient's condition than a one-time examining physician or a medical adviser, Congress specifically amended the Social Security Act in 1967 to provide that to be disabling an impairment must be "medically determinable."  42 U.S.C. §423(d) (1)(A). Consequently, a treating doctor's opinion does not bind the Commissioner when it is not supported by detailed clinical and diagnostic test evidence.  *Warner v. Commissioner of Social Security,* 375 F.3d 387, 390 (6th Cir. 2004);*Varley v. Secretary of Health and Human Services,* 820 F.2d 777, 779-780 (6th Cir. 1987); *King v. Heckler,* 742 F.2d 968, 973 (6th Cir. 1983); *Halsey v. Richardson*, 441 F.2d 1230, 1235-1236 (6th Cir. 1971); *Lafoon v. Califano*, 558 F.2d 253, 254-256 (5th Cir. 1975). 20 C.F.R. §404.1513(b), (c), (d), 404.1526(b), and 404.1527(a)(1)[2].

The Commissioner's regulations provide that she will generally "give more weight to the opinion of a source who has examined you than to the opinion of a source

---

[2]Section 404.1527(a)(1) provides:
You can only be found disabled if you are unable to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* §404.1505. Your impairment must result from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. *See* §404.1508.

who has not examined you." 20 C.F.R. § 404.1527(c)(1). When a treating source's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

When the treating source's opinion is well-supported by objective medical evidence and is not inconsistent with other substantial evidence, that ends the analysis. 20 C.F.R. § 404.1527(c)(2); Social Security Ruling 96-2p. *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013). The Commissioner's regulations require decision-makers "to provide 'good reasons' for discounting the weight given to a treating-source opinion. [20 C.F.R.] § 404.1527(c)(2)."[3] *Gayheart*, 710 F.3d at 375.

The Commissioner has issued a policy statement about how to assess treating sources' medical opinions. Social Security Ruling 96-2p. It emphasizes:

1. A case cannot be decided in reliance on a medical opinion without some reasonable support for the opinion.

2. Controlling weight may be given only in appropriate circumstances to medical opinions, *i.e.*, opinions on the issue(s) of the nature and severity of an individual's impairment(s), from treating sources.

3. Controlling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques.

4. Even if a treating source's medical opinion is well-supported, controlling

---

[3]Section 404.1527(c)(2) provides, in relevant part: "We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."

weight may not be given to the opinion unless it also is "not inconsistent" with the other substantial evidence in the case record.

5. The judgment whether a treating source's medical opinion is well supported and not inconsistent with the other substantial evidence in the case record requires an understanding of the clinical signs and laboratory findings and what they signify.

6. If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; *i.e.*, it must be adopted.

7. A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator.

The focus at this step is solely on whether the treating-source opinion is well-supported by objective medical evidence and not inconsistent with other substantial evidence. In making this determination the factors for assessing the *weight* to give to the medical opinions of any medical source, 20 C.F.R. § 404.1527(c), are not used. These come into play only when there are good reasons not to give the treating-source opinion controlling weight.  20 C.F.R. § 404.1527(c)(2)[4]; *Gayheart*,  710 F.3d at 376.

---

[4]Section 404.1527(c)(2) provides, in relevant part:
If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion.

If there are good reasons to find that the treating-source opinion is not control-ling, then the decision-maker turns to evaluating all the medical source evidence and determining what weight to assign to each source, including the treating sources. [5] The Commissioner's regulations require the decision-maker to considers the length of the relationship and frequency of examination; nature and extent of the treatment relationship; how well-supported the opinion is by medical signs and laboratory findings; its consistency with the record as a whole; the treating source's specialization; the source's familiarity with the Social Security program and understanding of its evidentiary requirements; and the extent to which the source is familiar with other information in the case record relevant to decision.  20 C.F.R. § 404.1527(c)(1) through (6).  Subject to these guidelines, the Commissioner is the one responsible for determ-ining whether a claimant is disabled.  20 C.F.R. § 404.1527(e).

---

[5]Even when the treating source's opinion is not controlling, it may carry sufficient weight to be adopted by the Commissioner:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and lab-oratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weigh-ed using all of the factors provided in 20 CFR 404.1527 and 404.1527. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p.

The case law is consistent with the principals set out in Social Security Ruling 96-2p.  A broad conclusory statement of a treating physician that his patient is disabled is not controlling.  *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).  For the treating physician's opinion to have controlling weight it must have "sufficient data to support the diagnosis."  *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 536, 538 (6th Cir. 1981); *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985).  The Commissioner may reject the treating doctor's opinions when "good reasons are identified for not accepting them." *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988); 20 C.F.R. § 404.1527(c)(2)("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."); *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004).  Even when the Commissioner determines not to give a treator's opinion controlling weight, the decision-maker must evaluate the treator's opinion using the factors set out in 20 C.F.R. § 404.1527(c)(2).  *Wilson*, 378 F.3d at 544; *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).  There remains a rebuttable presumption that the treating physician's opinion "is entitled to great deference."  *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 242 (6th Cir. 2007); *Hensley*, above. The Commissioner makes the final decision on the ultimate issue of disability.  *Warner v. Commissioner of Social Security*, 375 F.3d at 390; *Walker v. Secretary of Health & Human Services*, 980 F.2d 1066, 1070 (6th Cir. 1992); *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 855 (6th Cir. 1986); *Harris v. Heckler*, 756 F.2d at 435; *Watkins v. Schweiker*, 667 F.2d 954, 958 n.1 (11th Cir. 1982).

<u>Treating Doctor: Discussion</u>.  The administrative law judge recognized Dr. De La Cruz as a treating physician, but declined to give his disability opinion and functional assessment controlling weight in this case, explaining that he was instead affording those opinions "little weight." The administrative law judge determined:

> The questionnaire completed by Dr. De La Cruz indicates limita-tions that would preclude all work activity.  In fact, the limitations noted by Dr. De La Cruz suggest that the only posture  claimant could tolerate for any appreciable length of time is lying down.  In this regard, the Ad-ministrative Law Judge notes that the hearing in this matter began at 9:35 a.m. and ended at 11:14 a.m., more than 90 minutes, during which period of time the claimant sat.  This questionnaire states that Dr. De La Cruz had a four-month relationship with the claimant at the time this questionnaire was completed. The medical evidence of record shows the following: a normal echocardiogram; normal X-rays of the claimant's left hip and pel-vis; a finding by Dr. Dr. Teague that the claimant had "no severe physical impairment"; and a finding by Dr. William D. Padamadan, M.D., that he did "not see any indication for limitation of physical activities."  These findings are not consistent with a conclusion that the claimant is unable to engage in any work activity as suggested by Dr. De La Cruz; and he made no citation to the medical evidence of record, which would support his conclusions.

(*PageID* 52.)

Plaintiff argues that the administrative law judge failed to cite any specific evidence supporting his finding that Palen retained the ability to perform a reduced range of light work. Plaintiff maintains that Palen's consistent complaints of pain on clinical examination, the pain medication prescribed, edema, July 2008 MRI findings of disc space narrowing at L3-4 with mild hypertrophic degenerative changes throughout the lumbar spine, and a July 2011  x-ray finding of mild levoscoliosis all support Dr. De La Cruz's opinion that she cannot work. Plaintiff contends that the administrative law

judge did not apply the factors in 20 C.F.R. §404.1527(c)(2)-(6) §404.1527(c) when determining what other weight to give his opinion. That argument is not supported by a fair reading of the administrative law judge's decision.

In addition to fairly summarizing the medical evidence, the administrative law judge's decision sets out the medical evidence that he found undermined Dr. De La Cruz's opinion that Palen cannot work. First he points out that the treatment relationship was only 4 months old when Dr. De La Cruz made his October 2010 residual functional capacity assessment. Then the administrative law judge stated:

> The medical evidence of record shows the following: a normal echocardi-ogram; normal X-rays of the claimant's left hip and pelvis; a finding by Dr. Dr. Teague that the claimant had "no severe physical impairment"; and a finding by Dr. William D. Padamadan, M.D., that he did "not see any in-dication for limitation of physical activities." These findings are not con-sistent with a conclusion that the claimant is unable to engage in any work activity as suggested by Dr. DeLaCruz; and he made no citation to the medical evidence of record, which would support his conclusions. The Administrative Law Judge therefore gives little weight to the statements and findings of Dr. DeLaCruz as set out in the October 20, 2010, questionnaire.
>
> . . .
>
> In sum, the claimant suffers from several musculoskeletal impairments, which have been described as mild, minimal, and borderline in severity; and these problems considered alone or in combination with other impair-ments do not support a finding of disability. . . . The claimant's symptoms, although limiting her ability, do not support a conclusion that she is un-able to engage in all work activity. In considering the claimant's symp-toms, the Administrative Law Judge must follow a two-step process in which it must first be determined whether there is an underlying med-ically determinable physical or mental impairment(s)--i.e., an impair-ment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms. Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the Administrative

Law Judge must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the Administrative Law Judge must make a finding on the credibility of the statements based on a consideration of the entire case record.

(*PageID* 52-53.)

Further, when discussing plaintiff's credibility, the administrative law judge pointed to evidence that undermined Palen's subjective complaints of disabling pain as well as Dr. De La Cruz's opinion that her back pain precluded work:

1. The claimant's musculoskeletal impairments have been described as mild, minimal, and borderline;
. . .
5. She has normal range of motion in the spine, hips, knees, shoulders, elbows, wrists, and fingers; and there is no indication that she has a loss of grip strength, or decreased strength in the lower or upper extremities;
6. She has a normal gait without the use of assistive devices;
7. She has no sensory or motor abnormalities;
. . .
9. She has no communication, postural, manipulative, visual, or environmental limitations;
11. The findings of Dr. DeLaCruz in Exhibit 14F and 19F indicate that the claimant cannot engage in any work activity; however, the Administrative Law Judge assigns little weight to his conclusions;
12 Dr. Teague, non-examining, non-treating physician, and Dr. Padamadan, examining physician, found that the claimant has no physical limitations;
13. On June 15, 2011, Dr. Batra found that the claimant was "doing well clinically";
. . .
15. There is no indication that her ability to carry out the activities of daily living is eroded to the extent that she is precluded from engaging in all work activity.

21

> Additionally, there is no indication that the claimant experiences the side effects of medication, which significantly diminishes her residual functional capacity. The claimant does experience some pain, discomfort, and psychologically based limitations; however, the Administrative Law Judge is not persuaded that her pain and discomfort are at a disabling level of severity, duration, and intensity as the claimant alleges (SSR 96-7p).

(*PageID* 53-54.)

The administrative law judge's decision is supported by the record. Dr. De La Cruz's office notes indicate that plaintiff is suffering from low back strain. The only clinical finding he set out supporting his opinion that Palen's low back pain prevents her from working was lumbosacral tenderness. There is no evidence of nerve root impingement. MRI and x-ray findings have been modest. There are no  reported neurological deficits on clinical examination. Other examining physicians have  reported essentially normal findings. Plaintiff has, on occasion, had acute episodes of low back pain, but there is nothing in the medical record that would compel the administrative law judge to conclude that over a period of 12 months or more her pain was so severe as to preclude a reduced range work having light exertional demands.

Finding that the administrative law judge provided good reasons for discounting the weight given to Dr. De La Cruz's opinion that Palen cannot work and that there is substantial evidence in the record supporting that conclusion and for not fully crediting plaintiff Palen's subjective complaints of disabling pain, the Magistrate Judge concludes that plaintiff's assignments of error are without merit.

For the reasons set forth above, it is **RECOMMENDED** that the decision of the Commissioner of Social Security be **AFFIRMED** and that judgment be entered for the Commissioner.

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. § 636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

s/Mark R. Abel
United States Magistrate Judge